*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

───────────────

## UNITED STATES
Appellee

**v.**

## Jacob M. OZBIRN, Airman First Class
United States Air Force, Appellant

### No. 20-0286
Crim. App. No. 39556

Argued February 9, 2021—March 23, 2021

Military Judge: John C. Harwood

For Appellant: *Captain Alexander A. Navarro* (argued); *Major David A. Schiavone.*

For Appellee: *Captain Alex B. Coberly* (argued); *Colonel Shaun S. Speranza, Lieutenant Colonel Matthew J. Neil,* and *Mary Ellen Payne,* Esq. (on brief).

Judge MAGGS delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges OHLSON, SPARKS, and HARDY, joined.

───────────────

Judge MAGGS delivered the opinion of the Court.

The sole assigned issue in this case is "[w]hether the evidence that Appellant asked for 'naked pictures' from adults pretending to be minors is legally sufficient to sustain a conviction for attempted receipt of child pornography." Given the totality of the circumstances in which Appellant requested the naked pictures, we answer the question in the affirmative. We therefore affirm the decision of the United States Air Force Court of Criminal Appeals (AFCCA). *United States v. Ozbirn*, No. ACM 39556, 2020 CCA LEXIS 138, 2020 WL 2114230 (A.F. Ct. Crim. App. May 1, 2020).

## I. Background

Contrary to his pleas, a general court-martial composed of officers found Appellant guilty of two specifications of attempted sexual abuse of a child, one specification of at-

tempted sexual assault of a child, and one specification of attempted receipt of child pornography, in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880 (2012). The court members sentenced Appellant to a dishonorable discharge, confinement for three years, and reduction to the grade of E–1. The convening authority approved the sentence as adjudged.

This case concerns the specification of attempted receipt of child pornography. The specification alleged that:

> [Appellant] did, at or near Royal Air Force Mildenhall, United Kingdom, on divers occasions between on or about 16 August 2017 and on or about 18 August 2017, attempt to knowingly and wrongfully receive child pornography, to wit: photographs of what appear to be minors engaging in sexually explicit conduct, such conduct being to the prejudice of good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces.

To prove this specification, the Government presented evidence that three adults in the United Kingdom carried out "sting" operations to identify and catch potential child predators. These adults created fake profiles of young girls on internet chatting applications. When members of the public attempted to contact the girls, the adults communicated with them by sending messages.

These fake profiles attracted Appellant's attention. On August 16, 17, and 18, 2017, Appellant exchanged numerous text messages with the three adults. In these exchanges and unbeknownst to Appellant, the adults pretended to be young girls named "Febes," "Jodie Walsh," and "Jessica Saunders."

The messages between Appellant and Febes focused on sexual topics. Even though Febes told Appellant that she was only twelve years old, Appellant asked her whether she had had sex before; he described the feeling of sex; and he repeatedly asked to have sex with her. When Febes said that she did not know whether she wanted to have sex with Appellant, Appellant responded: "Okay just let me know when you feel like it and I will show you the ropes and don't worry I will make sure that it does not hurt." Immediately after this statement, Appellant initiated the following exchanges in which he requested pictures:

[Appellant:] have you seen naked guys or every [sic] sent naked pictures? I would have sex with you carefully

[Febes:] never seen no

[Appellant:] Oh I could show you if you want and I would like to see you too

[Febes:] I don't have a camera

. . . .

[Appellant:] There is nothing to be afraid of I will take care of you! And please can I have on[e] more picture

[Febes:] U can take tom[orrow]

[Febes:] With ur phone

[Febes:] We can do selfy

[Appellant:] Can I take naked ones?

[Febes:] I'm very shy

[Appellant:] We are having sex tomorrow and only I will see them

[Febes:] Kk

[Febes:] If u promise

[Appellant:] I do

Appellant's messages with the adult who pretended to be a girl named Jodie were similar. After Jodie told Appellant that she was thirteen years old, Appellant proposed that they meet and have sex. He then graphically described various sexual acts that he would perform on her. Appellant told Jodie that he would "[k]iss you take your clothes off lick you down there and when you are wet and ready stick my part in you." Immediately after making this statement, Appellant began the following exchange with her:

[Appellant:] Have you ever sent a naked picture to anyone or seen a guys part?

[Jodie:] No

. . . .

[Appellant:] Can you send me a naked picture?

[Jodie:] No I can't do that

[Appellant:] Why?

3

[Appellant:] It will help

[Appellant:] How about a regular picture with you holding a peace sign up?

. . . .

[Jodie:] I'm not sending naked pictures of me

[Appellant:] I mean any pictures

[Jodie:] Oh ok

[Jodie:] [Sends clothed photo]

[Appellant:] Yeah I was hoping the naked one would help but any will do

The messages between Appellant and the adult who pretended to be a girl named "Jessica Saunders" also concerned sexual topics. After Jessica told Appellant that she was twelve years old, Appellant proposed that they have sex. When Jessica expressed concern that having sex would hurt, Appellant assured her: "It won't if I go slow and am careful I won't hurt you." When Jessica asked what he meant about going slow, Appellant responded: "Well my dick has to go in your vagina during sex so I will put it in slowly." Some messages later, Appellant began the following exchange:

[Appellant:] have you every [sic] traded naked pictures before?

[Jessica:] no one has seen me naked

[Appellant:] do you want to see a dick so that you will know what goes in?

[Jessica] ok

[Appellant:] So you have to send a picture of you naked then you get to see a dick

[Jessica:] I haven't got any naked photos

[Appellant:] you have to take one

[Jessica:] I can't my sister is sleeping and my camera is broke

The court members found Appellant guilty of the specification of attempting to receive child pornography.[1] The

---

[1] The court members attempted to qualify its finding of guilt with the words "except Jessica Saunders." (The words "Jessica Saunders," however, do not appear in the specification as charged. The AFCCA accordingly concluded that the attempted exception

AFCCA affirmed, determining that the evidence was legally and factually sufficient to support the finding of guilt. *See Ozbirn*, 2020 CCA LEXIS 138 at *27, 2020 WL 2114230 at *10. One judge dissented on this point, concluding that the evidence was both legally and factually insufficient. *Id.* at *66, 2020 WL 2114230 at *23 (Key, J., concurring in part and dissenting in part). The dissenting judge reasoned that "Appellant made no request for images which would meet the legal definition of child pornography under the UCMJ, and none of the people he was messaging suggested they would send such images." *Id.* at *69, 2020 WL 2114230 at *25.

## II. Analysis

### A. Standard of Review

In this appeal, Appellant argues that the evidence is legally insufficient to support the finding that he is guilty of attempting to receive child pornography. "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)).

### B. Essential Elements of the Offense

The parties agree on what the essential elements of the offense are. An "attempt" is defined as "[a]n act, done with specific intent to commit an offense under this chapter, amounting to more than mere preparation and tending, even though failing, to effect its commission." Article 80(a), UCMJ. The President has listed receipt of child pornography as an offense under Article 134, UCMJ, 10 U.S.C. § 934 (2012). *Manual for Courts-Martial, United States* pt. IV, para. 68b.b.(1) (2016 ed.) (*MCM*). This offense has two elements: (a)

---

had no legal effect. *See Ozbirn*, 2020 CCA LEXIS 138 at *27 n.7, 2020 WL 2114230 at *9 n.7 (citing R.C.M. 918(a), (b); *United States v. Nicola,* 78 M.J. 223, 226, n.2 (C.A.A.F. 2019).) Appellant asserts in this appeal that the members sought to find Appellant not guilty of the attempted receipt of child pornography offense as it relates to Jessica Saunders. But Appellant does not contest the AFCCA's conclusion that the attempted exception was ineffective.

"[t]hat the accused knowingly and wrongfully . . . received . . . child pornography"; and (b) "[t]hat, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces." *MCM* pt. IV, para. 68b.b.(1).

The term "child pornography" means either "an obscene visual depiction of a minor engaging in sexually explicit conduct" or "a visual depiction of an actual minor engaging in sexually explicit conduct." *MCM* pt. IV, para. 68b.c.(1). The first of these two definitions is controlling here because the specification at issue alleged that Appellant attempted to receive "photographs of *what appear to be minors* engaging in sexually explicit conduct," rather than photographs of actual minors. (Emphasis added.) The term "sexually explicit conduct" means, in relevant part, a "lascivious exhibition of the genitals or pubic area of any person." *MCM* pt. IV, para. 68b.c.(7).(e). Accordingly, the parties agree that the Government was required to prove, beyond a reasonable doubt, that Appellant had a specific intent to receive photographs that were both "obscene" and that included a "lascivious exhibition of the genitals or pubic area."

The paragraphs of the *MCM* addressing the offense of child pornography do not define the terms "obscene" or "lascivious." *MCM* pt. IV, para. 68b. The military judge, however, defined these terms in accordance with the standard instructions in the Military Judges' Benchbook. Dep't of the Army, Pam. 27-9, Legal Services, Military Judges' Benchbook, ch. 3, para. 3-68b-1.d. (2020). The military judge informed the panel:

> "Obscene" means that the average person applying contemporary community standards would find the visual images depicting minors engaging in sexually explicit conduct, when taken as a whole, appeal to the prurient interest in sex and portray sexual conduct in a patently offensive way; and that a reasonable person would not find serious literary, artistic, political, or scientific value in the visual images depicting minors engaging in sexually explicit conduct.

Additionally, the military judge informed the panel: " 'Lascivious' means exciting sexual desires or marked by lust. Not

every exposure of the genitals or pubic area constitutes a lascivious exhibition. Consideration of the overall content of the visual depiction should be made to determine if it constitutes a lascivious exhibition." The military judge also identified factors for the members to consider in making this determination. *Id.* The parties do not contest the correctness of these definitions.

### C. Legal Sufficiency of the Proof of Specific Intent

Appellant contends that the evidence was not legally sufficient to prove beyond a reasonable doubt that he had the requisite specific intent. Appellant asserts that in his text messages, he asked for nothing more than "naked pictures." Under the definitions above, Appellant contends that naked pictures are not necessarily obscene and do not necessarily contain a "lascivious exhibition of the genitals or pubic area." *See United States v. Roderick*, 62 M.J. 425, 429 (C.A.A.F. 2006) (combining a review of the factors listed in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), with an overall consideration of the totality of the circumstances in determining what constitutes child pornography). Appellant emphasizes that he did not specifically request pictures of the girls' genitals or videos of them masturbating. He asserts that the "main purpose" of his request for naked photos was not to obtain child pornography but instead "to verify he was speaking to a real person." He points out that he specifically requested that Jodie send him a non-pornographic image ("I mean any pictures") after she expressly said, "I'm not sending naked pictures of me."

The question of what a person specifically intended at a particular time is a question of what thoughts the person actually had in his or her head at the time. Because actual mind reading is impossible, a person's specific intent generally can be determined only by the person's own admissions or by drawing inferences from the person's statements and actions and from the context and circumstances. Inferring a specific intent may be difficult in some cases, but that is not always so. As Justice Oliver Wendell Holmes famously recognized, "even a dog distinguishes between being stumbled over and being kicked." Oliver Wendell Holmes Jr., *The Common Law* 3 (1881).

In *United States v. Webb*, 38 M.J. 62, 68 (C.M.A. 1993), the appellant challenged a finding that he was guilty of "house-breaking with intent to peep." He argued that any conclusion about his specific intent was "pure speculation" given a lack of "clear evidence" about his purposes. *Id.* at 68. This Court, however, rejected the contention. It held that the specific intent required for an offense " 'may be inferred from the totality of circumstances' including 'the nature, time, or place of' appellant's 'acts before and during' the crime alleged." *Id.* at 69 (quoting *Goldman v. Anderson*, 625 F.2d 135, 137 (6th Cir. 1980)). There was evidence in the case that the appellant had "secreted himself in a storage room with a view of the shower room in the female officers' billet during the early morning hours without any apparent lawful purpose" and that he "knocked down and fled from the female officer who accidentally discovered him." *Id.* Based on these circumstances, the Court determined that this evidence was legally sufficient to prove the appellant's specific intent to commit the offense of peeping. *Id.*

As in *Webb*, after viewing the evidence in the light most favorable to the prosecution, we think that a rational fact finder could infer from the circumstances that Appellant had the requisite specific intent. Even though Appellant only asked for "naked pictures," he made the request in exchanges of messages that established a context for understanding those requests. Appellant believed that he was speaking to minors. In vulgar language, he graphically described very specific sexual conduct with them. He asked Febes, Jodie, and Jessica Saunders to engage in sexual relations with him. Throughout, Appellant's words evinced a specific focus on genitalia.

In addition, Appellant offered to send explicit pictures of his genitals in exchange for the naked photos that he requested. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could reasonably infer that Appellant intended the other half of the proposed bargain to include sexual images of genitalia. *See United States v. Isabella*, 918 F.3d 816, 835 (10th Cir. 2019) (concluding that "suggest[ing] a quid pro quo" involving on one side a picture of the appellant's genitalia "suggest[s] to [the other] the

kinds of photos [the appellant] wanted"). To be sure, other inferences about Appellant's specific intent might also be possible. But "in resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

Finally, we address Appellant's argument that his main purpose in asking for naked pictures was not to seek child pornography but to verify the identities of those with whom he was chatting. The argument is unavailing for two reasons. First, a rational fact finder could disbelieve that this was Appellant's intent based on all the other evidence cited above. Second, an intent to verify that he was speaking with real young girls would not preclude him from also having a specific intent to seek child pornography from them. *See United States v. Lee*, 603 F.3d 904, 918 (11th Cir. 2010) ("A reasonable jury could have found [the appellant]'s concern for whether Candi was a law enforcement agent proved that he was interested in using her minor daughters to produce child pornography, which is a crime.") A rational fact finder reasonably could conclude that the evidence viewed in the light most favorable to the Government established that Appellant desired sexualized images of minors that would simultaneously allay any concerns he had that the people with whom he was texting were not in fact minors.

In sum, we agree with the AFCCA that a rational fact finder could conclude from these facts that Appellant had the specific intent to obtain photographs that were both "obscene" and that included a "lascivious exhibition of the genitals or pubic area." In reaching this conclusion, we do not hold that naked photographs of persons who appear to be children are automatically to be considered child pornography or that a request for such photographs is automatically to be construed as a request for child pornography. The Government also does not make any such claims. As described above, and as we have held in *Roderick*, not all naked pictures of children are child pornography. We simply reaffirm what we held in *Webb*, namely, that inferences about specific intent depend on the totality of the circumstances, and those circumstances in this case are such that a rational finder of fact reasonably could infer that Appellant had the requisite specific intent.

### D. Legal Sufficiency of Proof of a Substantial Step

Appellant also asserts that the evidence was legally insufficient for finding him guilty of attempting to commit the offense of receipt of child pornography because there was insufficient evidence that he took a "substantial step" toward committing that offense. We decline to consider the merits of this argument because it is not within the scope of the granted issue and because Appellant raised the argument for the first time in his reply brief. *See United States v. Phillips*, 64 M.J. 410, 414 n.* (C.A.A.F. 2007). This Court "will not revive a forfeited argument simply because [an appellant] gestures toward it in [his] reply brief." *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 140 n.2 (2014).

### III. Conclusion

The assigned issue is answered in the affirmative. The decision of the United States Air Force Court of Criminal Appeals is affirmed.